Mr. Smith whenever you're ready. Thank you, Your Honor. Good morning. I first want to address the unusual standard of review. I want you to pull the mic down a little closer to where you are talking. Yeah. Good show. Thank you. Can you hear me? Yes. Okay. The standard of review is important and unusual in this case because it is not a typical 2254 case, which is governed by, as the Court knows, a highly deferential standard of review, the typical 2254D case. This case is governed by the de novo review standard because this case is governed by the Supreme Court's decision in Martinez v. Ryan, a 2012 decision which governs this case. By the way, the Commonwealth doesn't dispute that that case governs and that the standard of review is de novo. That's important. In other words, the issues that are being raised here in this Court and in the District Court were never raised in the Virginia State Court. So you're not reviewing a Virginia State habeas decision. That's why the de novo standard of review applies. So the District Court Judge in Abingdon, Judge Jones, agreed with us that Frizzle satisfied the first prong of the Strickland test. Basically because, and indeed even the defendant's attorney admitted that he fell below the Strickland standard of performance when he failed to object to the prosecutor's repeated, at least three times, maybe more than three times, repeated efforts to shift the burden of proof to the defendant at trial. So there should be no issue about that. And the government has, excuse me, the Commonwealth has not raised any issue in regard to that. What's at issue here is the judges and the Commonwealth's position that Frizzle did not satisfy the prejudice prong, the second prong of the Strickland test. And that's where the District Court erred. The District Court spent only a quarter of one page of a lengthy decision discussing its conclusion with respect to the prejudice prong. And I submit that the District Court's very brief discussion is not persuasive. Well, let me ask you in terms of how this thing went down, make sure I'm correct. The trial judges charged the jury first and then they made arguments. And then there was never any curative instruction about the argument of the Commonwealth's attorney. Is that correct? Correct. Yes, that's correct, Your Honor. And also there was never any evidentiary hearing in the District Court in Abingdon. So no evidentiary hearing about anything. Which statement are you addressing when you responded to that question? Which statement? Is this relating to the may infer versus the law infers? Or are you talking about intoxication versus premeditation? I'm talking about all the issues that were raised. When you answered the question, I mean, what were you referring to? I'm referring to all of those issues that I raised in my briefs, Your Honor. In other words, it wasn't just that the government, excuse me, the prosecutor and state court tried to shift the burden to the defense with regard to the intoxication. That's what you were addressing. And that one seems to be the more substantive claim that you have in my judgment. Well, that's what the District Court said. But I think it shouldn't be ignored that the prosecutor also directly contradicted the trial judges in generic instruction, which was correct, which was on the issue of whether there's only a permissive inference, or you must assume that a person intends the natural consequences of what he does. Well, I beat a dead horse on intent because the prosecutor later recognized that he was going down the wrong way, and he corrected himself. But he didn't do it, all the intoxication issue. Isn't that right? Well, he sort of corrected it, Your Honor. But who knows what the jury made out of all that when somebody first spends a lot of time saying something incorrect and then says, oh, by the way, I mean so and so. So, I mean, that by itself would be a relatively weak case. So I agree with Judge Niemeyer about that. If it was only that error, I wouldn't be here. With respect to the lack of curative instruction, at the close of the arguments and before the jury began deliberations, the court said, again, your verdict must be based solely on the evidence that you've heard in the courtroom and the law that I have instructed you, and then sent the written instructions back with the jury. So didn't the court essentially have the last word on what the law is? No, Your Honor, because those instructions that you were just quoting were made before there was any closing arguments in the case. No, no, no. What I just read, your verdict must be based solely on the evidence you heard in the courtroom and the law that I have instructed you on between the closing arguments and beginning of deliberations. That's interesting. And then, of course, they went back with the instructions from the court. Well, I wouldn't call that a curative instruction, Your Honor. That's a repeat of an instruction that I believe the court had. Well, don't you acknowledge that he corrected it? And why would it need a curative instruction even if he corrected it? I mean, he said, I misspoken. You have the judge's instruction on may infer, and he corrects this, and then the court sends the written instructions back, and if the jury had any question about it, they read the may. Well, Your Honor, it's very important to note that in the and in the district court, it's not at all clear that the instructions were sent back to the jury. As a matter of fact, the only evidence of that is the state prosecutor's statement that he thought the instructions were sent back to the jury, and Mr. Frizzle, the defendant, contradicted that. He said, unequivocally, they were not sent back. Didn't the judge say that they would be sent back? You mean the district court judge or the state judge? The trial judge. If he did, I'm not aware of it because I don't believe that's in the record anyplace, Your Honor. Um, what the state court judge said, um, if he said anything, and I, well, I know it's, I wasn't the trial lawyer, so I don't know what, I wasn't, I can't testify as to what happened, um, but, um, I, but it is, it is, you'll see in the, in the brief, in my briefs that, um, Frizzle stated unequivocally that the evidence didn't, excuse me, the instructions did not go back, and, and the, the, it, it was, uh, Mr. Light, the state defense attorney who said, I think the, the instructions were sent back. I think. Not, they were sent back. So there's a, now, if that turns out to be a, you know, a very decisive issue in this case, I guess you'd have to send it back to the district court for an evidentiary hearing on it. But, um, that's, that's where things stand now. So what's your opinion of my practice? And as you know, I'm a district court judge, mostly. Um, but before the jury retires to the jury room, I always tell them, if you discern any difference between the law given you by the lawyers and by this court, you are to be guided by this court's instructions. Would that be good enough under a situation like this? No, no, your honor. Um, because, um, it, it doesn't specifically deal with the prejudice caused by the, this state prosecutor's closing, what's called the rebuttal, which really was his closing argument that the defense lawyer didn't have an opportunity to respond to. Um, that, uh, I mean, that's, that's an issue I tried to raise, but COA was not granted by this court on that issue. But nonetheless, I briefly mentioned it in, in my opening brief, because I think it's important. Um, uh, because you know, I, I, I means perhaps there are cases where that kind of instruction would be sufficient, your honor, but I don't think it was sufficient in this case because, um, the, the prejudice was too great from the repeated shifting of the burden of proof by the state prosecutor, uh, to, to the defendant. Can I address that before your, as your time's getting low, I I'd like to address the, uh, issue relating to the intoxication. Yes, your honor. And, uh, uh, the, uh, prosecutor says, uh, he cannot prove, uh, that he was incapable of doing it, incapable of premeditating the evidence shows, et cetera. So it puts on the defendant, the burden of showing intoxication. Absolutely. But right before that, as part of the very, very same discussion, he says, I'm telling you, we've proven attempted capital murder. He was a law enforcement in the performance of his duties. He knew that he recognized it. It was an intent to kill. It was willful, deliberate, and premeditated, even though it was a bad reason, even though it was a hasty decision, it was a decision he made and he acted on it. That's all we've got to prove. It was all done with malice. All of that's correct. And the premeditation that he took on himself, he says, we have proved me premeditation. Then he goes on to say the, an intentional doing a wrongful act without legal excuse or justification. He goes to the notion of intoxication, which is an affirmative defense. Uh, that burden does fall on the defendant. The premeditation has to be proved by the government, but the avoidance of premeditation by intoxication is an affirmative defense as we proved by the defendant. I think, if you read the whole thing and not just the one thing, he did not change the burden of proof on premeditation. Your Honor, if you read the whole thing. I just read the whole thing. I'll read further. I don't think that's the only thing he said about that. What would your Honor quote? He said, we have undertaken to prove the premeditation and have, and he went through several times talking about how he proved premeditation, but I'm quoting from the language right before he said that the defendant has to prove avoidance of that by intoxication. And so the lead up to that statement, if you take it out of context, it looks like it shifts the burden, but, uh, what he really does, he says, I do have the burden as the state to prove premeditation and he can avoid it by showing intoxication. That's an accurate statement of the law. I'm not, it's not clear to me that intoxicant in Virginia under state law and whether intoxication is an affirmative defense or because it seems to me, well, the district court, uh, and the, uh, the district court assumed the first, uh, era, but that seems to me, this also goes to prejudice because if he didn't misstate the law, there's no prejudice. Yeah, correct. Your Honor. But, but just as before, just because at some point he, he, he, he states the law correctly, doesn't mean it wasn't correct. And the facts. And he says, I have undertaken to do it and have done it. And he uses the word premeditation, which is the only thing that the intoxication can undermine under Virginia law. No, it's premeditated. Your Honor, that's not true because malice, malice, if you read the court's malice instructions that you, it had right in the record. He proved malice too. He said, he said it with malice. Yes. Yes, Your Honor. But that's, he said he did, but he didn't prove malice. Um, you know, that's for the jury to decide. But my question is whether he shifted the burden improperly. And I'm suggesting to you, if you read it in context of what he said, just a very previous sentences, he stated the law accurately and as instructed by the court. Well, well, that may be Your Honor, but I don't see that that makes a difference because the government, I mean, there's no dispute that he was incredibly intoxicated. That's not a, that's not a disputable issue. So of course he proved intoxication the, the, the, and that negated malice because he was. Your challenge is that when the prosecutor said he had to show intoxication, the prosecutor was shifting the burden. And I'm suggesting to you, he did not shift the burden on the elements of the, of the crime. The elements of the crime required premeditation, uh, and, uh, for first degree murder. And, and, uh, he said that was my burden and I undertook it and I did, satisfied it. And then he said to avoid that, the burden, uh, he has to, uh, I understand what you're saying, Judge, um, but, but remember, just, just remember that both the district court judge and the defense attorney himself in his affidavit states that they, he, he repeatedly shifted the burden to the defendant, that it was improper. And it was, and it was, uh, and, and the defendant and the defense counsels, excuse me, the defense counsel was the one who admitted that, uh, he, he, he satisfied the first prong of Strickland. He has performed by failing to object to the repeated shifting of the burden of proof. Uh, he, he, the defense counsel was, was at fault by not objecting, um, and not asking for, and not, well, we didn't even get into that, but I, I argue that another thing he could have done is ask for rebuttal because he never really had any opportunity to rebut them. When you go back and sit down, how about see if you can take a look at Morgan v. Commonwealth and see whether or not that helps you out as to voluntary intoxication under Virginia law? I'm, I'm sorry. Morgan v. Commonwealth, 646 Southeast 2nd, 899 at 902. Uh, I don't think it's a problem. I don't have that, uh, in front of you, but if you could repeat what, I'm sure I would agree with you, but I don't. I think it stands for the proposition that it's not an affirmative defense unless you get to insanity, but take a look at it. I'm sorry, Your Honor, I'm having trouble hearing you. I'm suggesting to you that that case, uh, voluntary intoxication does not constitute an affirmative defense unless it produces insanity, and what it does is mitigate. Well, I think that's, I think that's the way the court instructed. The court said voluntary intoxication is not a defense to any crime that does not require premeditation. The district, the state court said that? That's what's in instruction 21. It's not, but it is, it is a defense to malice. I thought that that was, because if you... This was the instruction given, and the instruction seems to be consistent with the notion that premeditation requires this, uh, thinking and, and, uh, undertaking a plan, and that if you're too intoxicated to do that, then it's second-degree murder. Well, um, well, your, the district court's, I mean, excuse me, the state court's instruction on malice is very clear, and it's lengthy. I was talking about premeditation. I'm not addressing, because, uh, the, uh, part you're complaining about was, uh, the prosecutor was saying that, uh, premeditation belongs with the state, has to prove that, but that can be avoided by showing intoxication, and that the defendant didn't show it, and that's, uh, I was addressing that and not malice, although the prosecutor included the word malice, too. Yes, um, well, um, uh, I think, uh, one very significant way in which the, uh, State Defense Counsel, Mr. Light, uh, uh, fell well below the Strickland standard is Frizzle, Frizzle had a great defense to the malice, uh, element of the, of all of these offenses, um, beyond voluntary manslaughter, but, you know, he really didn't, he barely discussed mal, the malice issue, and I don't know how anybody could say that, that Frizzle was, had a mind subject to reason at the time this happened. Well, that's a question for the jury. The question, your, your complaint was that he shifted the burden improperly, and I think Lawler is the recent, uh, burden of proof on intoxication and says, we have said, this is a state court, we have said a person who voluntarily has become so intoxicated as to be unable to deliberate and premeditate cannot commit any class of murder that is defined as willful, deliberate, and premeditated killing. However, proof of mere intoxication is insufficient. The, no, however, proof of mere intoxication is insufficient. The defendant must establish intoxication so great it rendered him incapable of premeditation. Yeah. Well, it cites, and it cites cases. Yeah. But, but that, that, that instruction actually goes to, um. No, that's the, I'm reading from the Supreme Court case of Virginia. That was the Supreme Court from, uh, Lawler. Um, I'm sorry. I, I, I'm not, uh, I don't have that in front of me and I, I, I can't address that. Your Honor, but I can address what the, what the state court judge said. And, and, and, and by the way, our, um, our argument isn't limited to the, although it does focus on the shifting of the burden of proof. Um, we, we also challenge the, the, uh, other aspects of the, of the, uh, trial counsel's, um, effectiveness for, and. Why don't you take this up on, on, uh, on rebuttal? I think we've gone several minutes, several minutes beyond. You've been generous to me.  Yeah. And I, I'm past my rebuttal time, but I would appreciate. Oh, we'll give you a rebuttal. We'll give you a rebuttal. Thank you very much. Thank you very much. All right, Mr. Currie. Good morning and may it please the court, Your Honors. Liam Currie on behalf of the appellee and respondent in this matter. Um, just to begin with a, just a bit of a roadmap, I, I know that the procedural posture of this case is a little bit unusual, but I think there was from, uh, my opposing counsel's argument, a little bit of a conflation of what the exact posture of the two issues is. In the district court, on the issue of the permissive inference, they, the, the district court found that that matter was not substantial for the purposes of Martinez and therefore was procedurally defaulted. Um, I know the court didn't really have any question, didn't have a whole lot of questions for my colleague on that question. So if it's okay with the court, I'm happy to move on to the second issue, which is the issue that the court found was not, was not procedurally defaulted, was substantial for the purposes of warranting a merits review in the district court, but ultimately concluded that while a reasonable counsel should have objected to the prosecutor's remarks, you know, in an attempt to get a curative instruction from the court, that ultimately there was no prejudice. And I think that the trial, the district court's finding of no prejudice finds ample support in the record, which includes the fact that the jury was properly instructed on this issue, both before argument, after argument, and that it received . . . happened after argument. Well, we have the, the, the statement from the trial judge where he's discharging the jury stating that, you know, that the case must be decided on the law as instructed. And I know there's been a suggestion that somehow this matter was decided without the jury having the written instructions. And I think the record plainly shows that that's not the case. Why didn't the prosecutor, uh, in his statements actually follow what, how the jury was instructed? Why, well, I mean . . . I mean, that goes, while you treat that as a first prong, it goes to prejudice too. I mean, the notion that if he correctly states the law, there's going to be no prejudice for what he said. I, I believe so, yes. I mean, obviously I'm not attempting to re-litigate the performance prong. Obviously the degree of fault in which the prosecutor's, uh, remarks could have been interpreted is certainly relevant for prejudice. And I would suggest that, you know, you know, the arguments in this record included, I think, approximately 70 transcript pages. And the number of objectionable, uh, lines of, uh, transcript is about somewhere between 15 and 20 pages. And subsequent to the objected to remarks, the prosecutor, uh, uh, Judge Niemeyer, you read extensively from the record. But there's, at one point he, uh, the prosecutor and the district court relied on this language. He just affirmatively states, let me make sure I have the right page in the appendix. Um, it's on page 115. We have to prove that this defendant intended to kill. So there may have been some loose language from the prosecutor, but I don't think . . . Well, in the section I quoted, he not only said we had to show he intended to kill, but he had to have premeditation. Premeditation, that's correct, Your Honor. Use that word.  And I don't think that there's any question, um, you know, when we talk about prejudice and we look, we want to look at the cases that have been cited. I don't understand how you're acknowledging that the jury was prejudiced, uh, could be, uh, uh, prejudiced if the prosecutor stated the correct statement of Virginia law. Well, I think I, I'm just trying to address it because it's my understanding that that's the opposing counsel's argument that these, you know, having stated, you know, the language too loosely or in a way that suggested a burden shifting even one time resulted in prejudice. Obviously, I reject that position. Well, it wasn't one time. It was three times, wasn't it? Um, it's a, it's a one incident for the permissive inference, if we're going to be making, be precise about what language we're talking about. And then I think there was three distinct, um . . . where, you know, the evidence was that he was at an alcohol blackout. He urinated on himself. He missed the guy five times. I mean, obviously he was drunk. Uh, where do we draw that line? Well, I mean, obviously the, the, we want the prosecutor's language to be precise and as accurate as possible every time he speaks, uh, on what the law is. But I don't think that there's, this is a case in what, similar to those that have been cited by my opposing counsel in which the prosecutor urged the, um, jury to consider an inaccurate or erroneous statement of law. This is not a state, a case in which the prosecutor, you know, that there's several cases that were cited by my opposing counsel about the prosecutor had argued facts that were not evidence, had blatantly misstated the evidence, and then materially relied on misstatements of the evidence at trial to, you know, ask for a conviction on an improper basis. In this case, what we have is a jury that was properly instructed. We have a theory, we have the, you know, there's approximately, you know, the, the, the first, the opening salvo of the Commonwealth's closing is essentially asking the jury repeatedly to pay attention to what each instruction of the law is and asking them to apply it correctly in this case. I think what, um, and then even in the, um, you know, so then there's multiple instances in the record where the prosecutor says, you know, we, we, we know what our burden of proof is. At one point that there's a statement, he says, this is not a complicated case. We have to prove the intent issue. It lies with us. And we have done that. We did that in our opening. We did, we've done that in our rebuttal. Well, it's like, it's like I told your colleague, I mean, the intent issue, at least with me, is not a winning issue, even though it's, it's the intoxication issue that, that bothers me. Okay. And am I right that, uh, obviously voluntary intoxication in Virginia is not an affirmative defense to any crime, but may negate deliberation and premeditation in a first degree and capital murder case. Is that the law in Virginia? That is correct. And I, I don't, um, I didn't raise, uh, an argument about whether it was an affirmative defense. But you agree that there's more than a scintilla of evidence about voluntary, about voluntary intoxication in this case. I believe that there's only a scintilla, or there's certainly evidence of mere intoxication, which is not enough. And what I would suggest is that the, any evidence that could be interpreted as a level of intoxication that rendered Mr. Frizzell, or Mr. Frizzle, I haven't, I'll, I'll trust my opposing counsel's pronunciation on that, that Mr. Frizzle, that he, there was insufficient or practically no evidence that he was so intoxicated that he was incapable of premeditation and deliberation. For the reasons that the prosecutor focused on, the entire, uh, purpose of the closing argument and the rebuttal is to show the, the jury that the evidence of premeditation and deliberation was pretty overwhelming in this case. I mean, we have the fact that, you know, after he has been tased by the officer, he identifies the officer by name. He, he shouts at him in an angry fashion. He uses offensive language and he does so not, you know, well, he's just leaning up against a tree, hanging out, minding his own business. The testimony is, is that his hand is in his pocket and we know that in his pocket is a loaded revolver, right? So the... But he also says, uh, uh, which indicates his intent, you have screwed up or, uh, used a, uh, with a, with a F word. Yes, yes, it's the, you, I'll clean it up and say you, you, you done messed up now. And I think there's an, I think that's pretty clear. That's sort of indicative of that. He is now reacting to that observation, which is a premeditation. That's correct. And I think what, you know, what the prosecutor was probably attempting to do was, was to say, look, when we have, we have gone through the evidence of the premeditation and deliberation, it's, it's, it's going to be really hard for a jury to conclude that he is not premeditating based on the facts that we are focusing on in our closing argument. So therefore we have necessarily also proven that he can in fact premeditate that while he is intoxicated, while he has marijuana in his system, while he has been tased, the facts that necessarily show that he did premeditate also show that it is not a reasonable conclusion to, to conclude that he was incapable of doing so. And so I think that's, you know, and then, so I think, you know, back to this defense, the element of first degree murder includes premeditation, right? That's correct. And as distinct from all other crimes where intoxication is not a defense, the Virginia courts have said that. They have said it is a defense to premeditation. That's correct. And it says here, defendant must, this is the lawyer, defendant must establish intoxication so great it rendered him incapable of premeditation. Here's the Essex case. The defendant may negate the specific intent requisite for capital of first degree murder by showing that he was greatly intoxicated as to be incapable of deliberation or premeditation. Geronimo, this is another one. The defendant's level, oh, that's just a fact finder must find, but it's the same, same type of thing, but they all put the burden after the government proves premeditation, put the burden on the defendant of showing that he was so intoxicated he couldn't premeditate. And whether you call it an affirmative defense or an avoidance, it seems to me the government satisfies its proof by evidence of premeditation and recognizing it had to prove premeditation. And when it says then the defendant has to show intoxication, these cases say that explicitly. Three Supreme Court cases from Virginia. And I don't know why there's such a big debate over whether the jury was improperly informed. Well, I mean, based on those recitations of the law, it's clear that the prosecutor's arguments were accurate statements of the law. But, you know, that was not a position that I had adopted in the district court, so I didn't. Well, I understand you were focusing on the prejudice and you said there's plenty of evidence to show that regardless who had the burden. Right, but it certainly is, you know, it is still relevant for the prejudice question. And of course the government's evidence, they did put in evidence of intoxication, but they also put, the government also put in evidence of premeditation with the delay in the use of the gun, the reflection on it, the statement he made to him. He was certainly, he was intoxicated, as Judge Floyd said, he fired five shots, and I think he missed completely. Sure. But, you know, the testimony was not only that he fired five shots, it's that, you know, this is not a situation in which, you know, he removes the gun from his pocket and it goes off and, you know, that's a similar factual scenario. No, the evidence suggests some deliberateness in pulling the gun out, that's no question about it. Deliberateness in pulling the gun out and in pointing it in the direction of the officer, and there's testimony that the weapon that was fired was one that needed five individual trigger pulls, you know, each capable of showing more and more additional evidence of specific deliberation and Mr. Frizzle's specific intent to kill this officer in this instance. Anything more? I don't think there's anything more unless the court wants, wishes for me to address the Fisher cumulative prejudice argument. It was the position in the district court that there was only one non-defaulted claim, so cumulative prejudice review was impossible if this court were compelled to find that both, um, both matters were substantial for the purpose of Martinez. I would ask this court to find under Fisher that cumulative prejudice review is not the accepted practice of the Fourth Circuit. Thank you, so you say, I mean, I'm not excited about the intent issue. Supposedly, the panel majority says the intent is that you don't believe that these procedurally defaulted claims can be aggregated. If it's procedurally defaulted? Yes. No, no, I don't, I don't think so because effectively than that, I think that would spell the end for procedural default if the court would still be required to review, well, it's like, let's just pretend this wasn't defaulted and see what the prejudicial effect of these errors might have been. It was, it would only be possible if both claims were substantial for the purpose of Martinez, but then that's when I would suggest that Mr. Frizzell would run into the problem of Fisher, which would, which has held and subsequent cases have held in this court that cumulative prejudice review is not permitted in this court. And I would just submit any remaining issues and questions to my brief and ask this court to affirm the judgment below. Thank you. Mr. Smith. Yeah, I want to quickly address several points here. Specifically on the premeditation point that you're, Judge Niemeyer has been focused on. It wasn't just that the prosecutor should, you know, allegedly shifted the burden of proof to improperly to the defendant on that point. Shifting the burden of proving what? Proving intoxication. Your Honor, let me finish. No, no, I, no, but it's very important because your argument depends on shifting the burden of an element of the offense and that can't be done under the constitution due process clause. And one of the elements is premeditation. I understand. So your argument has to be that there was a shifting of the burden of premeditation. That's the intoxication, the absence of premeditation. You can't prove the absence of premeditation, the burden on the government by intoxication. Your Honor, one of my points is this is the, we never raised a sufficiency issue in this case. There is no sufficient. You raised a shifting burden. But my question is what, what was shifted and, and, and you say the, the government had the burden to prove the absence of intoxication as an element of the offense? You know, I'm, I'm not, after hearing your Honor recite what various Virginia courts have said, I'm not sure about that at all. Well, I'm not sure either. I mean, it's just not totally clear because it may not be affirmative defense like insanity is, but it is a burden that he carries because it doesn't make sense to put the burden on the government to say he wasn't intoxicated. I understand your Honor. But, but it's clear, you know, my point is this, it's very clear. There's overwhelming evidence contrary to the government that, that he was intoxicated. It's, it's, it's all in my briefs. Just read that again. But, but here's the more important point that I want to make, Your Honor. Wasn't the prosecutor also distorted the burden? Let's assume that the defendant does have the burden. He certainly didn't have the burden to prove that he didn't even know what he was doing. That's more like an insanity defense. That is that there's no case law saying that that is what the defendant must prove in order to show intoxication, which negates malice and premeditation. So look at, look at what the prosecutor kept arguing was the defendant's burden. Not, not merely that it's the defendant's burden to prove intoxication. He was, he was arguing, which, which he could have been correct on as, as Judge Niemeyer says. Yeah, he has to prove it. Mere intoxication is not enough. He has to prove that he was so intoxicated that he could not premeditate. But that's not what he said. He said he has to prove that he didn't even know what he was doing, which is, which is really, it's, I argue this in my brief. That sounds like an insanity defense, which is a much higher level of, of proof necessary to prove insanity, which is the defendant's burden. So, so, and that was never corrected. Like Essex says, the defendant may negate the specific intent requisite for capital or first degree murder by showing that he was so greatly intoxicated as to be incapable of deliberation or meditation. I don't know. That's a higher level than just not intoxicated. Yeah, I'm not disputing that, Your Honor. What I'm saying is that what the prosecutor insisted the defendant, Mr. Frizzle, had to prove was a much higher level than that you just quoted. He said he has to prove he doesn't even know what he was doing at the time. In other words, he thought he was at a certain... Do you think that's different from inability to deliberate or premeditate? Absolutely different. Way higher burden. He's saying the defendant had to think he was at a carnival shooting at, you know, in one of those shooting games, you knock down the ducks, you know, instead of where he was shooting at the deputy sheriff. That is completely wrong. The defense counsel never objected to that. There was no curative instruction. The state judge didn't stop the prosecutor and say, wait a second, that's not his burden. I mean, he could have said, yes, he has the burden of proving intoxication, but he doesn't have to show they didn't even know what he was doing. And just look at the, you know, that's not the only instruction that the judge gave. Look at his malice instruction, which is correct and not disputed. The malice instruction itself shows that, you know, the government had an incredibly weak case on malice, which malice is necessary for any murder offense in Virginia. We have before us really only the two prosecutor's statements. That's what we have agreed to review on this case. Anyway, I think I'll give you one minute to wrap up. OK, thank you. You're over that through the red light. That, you know, one thing I couldn't get to given the time limits is that, you know, the government's basic argument throughout in its response brief is that the evidence was overwhelming. The government's state's evidence was overwhelming. It clearly wasn't. And I spent most of my reply brief, which is lengthy, shooting down that argument. And you've got to read that because that's really what this case should turn on. And it's very important to note that the judge, the district court judge, never said or even suggested that the government's evidence was overwhelming. Because what I'm arguing is that the real issue here is whether the district judge was correct to say there was no prejudice from what happened. And this is a case where the government's evidence on the mens rea elements was weak. And certainly the intoxication evidence was incredibly strong. I mean, again, just look at the briefs. You don't have to dig through the record to find this. It's right in my briefs. I mean, and the district court recognized that. Read the district court's opinion. I think we've gone far beyond. We understand your arguments. Okay, Your Honor, I really do appreciate it. This could be my, you know, I'm going to be 75 later this week. This could be my last argument before this court. Well, no, we'll see you back. You've got many years to go. I hope you do. I intend to keep going as long as I'm able. Well, congratulations on your achievements. Well, thank you so much, Your Honor. To practice that long, it's a noble practice. And you obviously value that. I really appreciate your words, Your Honor. Let me just mention one thing that's not in the record. Mr. Frizzle has already served eight years and nine months. Exactly. Eight years and nine months in state prison. He's not in good health. He is, you know, he's 61 years old. 61. So I ask that, take that into consideration if you're thinking about, I'm not saying that should sway the judgment of the court. But if you do agree to vacate the decision, I would suggest that you try to avoid sending it back for an evidentiary hearing, unless it's really necessary. Because his wife is afraid he's not going to last many more years if he's in prison. So take that into consideration. We'll come down and we'll greet counsel, greet you, and then take a short recess. Thank you. This honorable court will take a brief recess.
judges: Paul V. Niemeyer, Henry F. Floyd, Kenneth D. Bell